| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

UNITED STATES OF AMERICA      §
                                   §
*versus*                                  §       CASE NO. 4:15-CR-129(6)
                                   §
TYRON DESHAN FORMAN       §

### MEMORANDUM AND ORDER

Pending before the court is Defendant Tyron Deshan Forman's ("Forman") *pro se* Motion for Compassionate Release (#718), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of the Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#723). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.     <u>Background</u>

Forman's offense of conviction stems from his participation in a drug-trafficking conspiracy. On October 11, 2016, Forman was named in a one-count Information in the United States District Court for the Eastern District of Texas, charging him with Conspiracy to Distribute or Possess With Intent to Distribute 28 Grams or More of a Mixture or Substance Containing Cocaine Base ("Crack") and Less Than 500 Grams of a Mixture or Substance Containing Cocaine, in violation of 21 U.S.C. § 846. Subsequently, on October 12, 2016, Forman pleaded guilty to the charged offense pursuant to a non-binding plea agreement. On May 9, 2017, the court sentenced Forman to 115 months' imprisonment, followed by a five-year term of supervised

release.  The court ordered Forman's federal sentence to run concurrently with any sentence imposed in his relevant state court cases, Docket No. 25544 in the 6th Judicial District Court of Lamar County, Texas, and Docket No. 60640 in the Lamar County Court at Law.  On August 29, 2017, Forman completed his state sentence for aggravated assault and stalking convictions.  Forman's federal custody time began on December 5, 2017.  Forman is currently being housed at the United States Penitentiary Beaumont, located in Beaumont, Texas ("USP Beaumont").  His projected release date is October 24, 2025.

II.   Analysis

   A.   Exhaustion of Administrative Remedies

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

2

and that such a reduction is consistent with applicable policy statements
issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his

3

administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, on October 27, 2020, Forman submitted a request for compassionate release to the warden of USP Beaumont on the same grounds as his present motion.  On November 10, 2020, the warden of USP Beaumont denied Forman's request for compassionate release, noting:

> [Reduction in Sentence] consideration may be given to inmates, who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. Your request does not meet this criteria. The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your asserted underlying medical conditions do not currently warrant an early release from your sentence.

The warden had denied Forman's request for home confinement on October 3, 2020, stating: "You have a High risk PATTERN score for recidivism, you are housed at a high security level institution, and you have only completed 38.1% of your federal sentence.  You also have a

4

criminal history of violence." Although Forman complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria. *United States v. Shkambi*, ___ F.3d ___, No. 20-40543, 2021 WL 1291609, at * 3 (5th Cir. Apr. 7, 2021). First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at *2. Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at *3. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id*.

Section 3582 (c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics;  the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

5

considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Shkambi*, 2021 WL 1291609, at * 3.  Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement only governs motions filed by the Director of the BOP.  *Id*. at *4.  Although the court is not bound by the Commission's policy statement contained in § 1B1.13 or the commentary thereto, the court finds that they inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release.  *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

B.    <u>Medical Condition</u>

In the instant motion, Forman contends that he is eligible for compassionate release due to his medical conditions—specifically claiming that he suffers from hypertension, diabetes, an unspecified "nerve condition," bronchitis, and a "hole in [his] heart." Additionally, in his request to the warden of USP Beaumont, Forman noted his obesity as grounds for compassionate release. While not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

When interviewed in connection with his Presentence Investigation Report ("PSR"), prepared in February 2017 and revised in March 2017, Forman reported that he was diagnosed with insulin-dependent diabetes in 2010. Forman also indicated that he suffered from high blood pressure, for which he was treated with an unknown prescription pill. Forman's BOP medical records reveal that he has been diagnosed with Type 2 diabetes with diabetic neuropathy, hyperlipidemia (high cholesterol), and constipation. Forman's BOP medical records also show that he has a body mass index of between 37.0 and 37.9, which indicates that he is obese according to the Centers for Disease Control and Prevention ("CDC"). Forman has not been diagnosed with hypertension (high blood pressure), and his most recent blood pressure readings,

138/80 on January 22, 2021, and 132/87 on January 7, 2021, suggest that he is "at risk" of having high blood pressure, but that he does not currently have it according to the CDC.[4]  His records also note that his hyperlipidemia is "well controlled."  Moreover, there is no indication in either his PSR or his medical records that Forman suffers from a hole in his heart.

Forman's medical records reflect that he has a history of non-compliance with his diabetes treatment plan.  Forman often refuses to have his blood glucose levels tested, having refused testing 54 times, as well as one no show, within the first 60 days of 2021.  A medical note by Timothy Byrd, R.N., on February 3, 2020, shows that he requested that Forman be discontinued from the "insulin line" because Forman "did not come to medical for routine checks and refused all insulin while it was ordered."  Forman explained his elevated blood glucose reading on September 7, 2020:  "I['ve] been partying these past few days, I'm going to do better though."  On December 14, 2020, A. Lynn, N.P., noted of Forman:  "inmate with consistently elevated blood sugars and refusals of insulin."  That same day, L. Carson, L.V.N./I.D.C. ("Carson"), observed that Forman is "extremely non[-]compliant with insulin."  At a clinical encounter on January 2, 2021, Carson noted that Forman "said he ate sweets with the holidays" and that he was "non[-]compliant."  Again, on January 20, 2021, Carson stated that Forman is "non[-]compliant" and "refused [insulin]."  A Medical Treatment Refusal, signed by Forman, shows that he refused insulin on January 21, 2021, and notes:  "Refusal of diabetic treatment with [insulin]. [N]ot

---

[4] According to the CDC, a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

consistently taking the [insulin] and not consistently getting insulin or [blood sugar] checks in the morning." The refusal form, which Forman signed, contains the following warning:

> Not being compliant with diabetic treatment as described above can lead to diabetic complications such as heart attack, non healing wounds, loss of limbs, stroke, loss of kidney function, also includes other health complications including death.

The form also sets forth the following disclaimer immediately above Forman's signature:

> I understand the possible consequences and/or complications, listed above, and still refuse recommended treatment. I hereby assume all responsibility for my physical and/or mental condition, and release the Bureau of Prisons and its employees from any and all liability for respecting and following my expressed wishes and directions.

On January 29, 2021, Forman again refused his insulin, saying that he was "going to exercise." Thus, it appears that Forman is actively impeding the BOP from properly treating his diabetes. Nevertheless, the BOP continues to monitor Forman's diabetes, including ordering A1c-level tests every three months. In fact, Forman is currently prescribed amitriptyline, aspirin, metformin, and insulin to treat his diabetes.

Forman also complains that he contracted COVID-19 and that he now is "having problems breathing." Forman's BOP medical records reveal that he was diagnosed with COVID-19 on December 19, 2020. After ten days of remaining asymptomatic, he was removed from isolation on December 29, 2020, and it was noted on his medical records that he was in remission. On five days between December 15 and December 28, 2020, Forman denied having a cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, or nausea or vomiting. Thus, nothing in Forman's medical records support his experiencing his now-claimed complications from COVID-19.

Forman is classified as a BOP medical Care Level 2 inmate.  According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months.  Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring."  None of Forman's medical conditions are terminal or substantially diminish his ability to provide self-care nor do they otherwise present extraordinary and compelling reasons justifying compassionate release.  *See Thompson*, 984 F.3d at 433.

The court acknowledges that, according to the CDC website some of Forman's underlying medical conditions, specifically, obesity and Type 2 diabetes, can make him more likely to become severely ill should he contract COVID-19; nonetheless, such commonplace maladies do not make Forman's case "extraordinary."  *See id.* at 434.  According to the CDC, 34.2 million people in the United States, approximately 10.5% of the population, have diabetes.  Of those, 90 to 95% have Type 2 diabetes.  In addition, the CDC reports that 42.5% of the adult population in the United States is obese and 73.6% is overweight.  Due to their prevalence, diabetes and obesity cannot be deemed "extraordinary" in order to merit compassionate release.  *See United States v. Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year-old woman who was obese with a body mass index of 36); *United States v. Williams*, No. CR 15-83-SDD-EWD, 2021 WL 414825, at *3 (M.D. La. Feb. 5, 2021) (denying compassionate release to inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care within the facility);  *United States v. Grant*, No. 16-00172-01, 2021 WL 149308, at *4 (W.D. La. January 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19,

courts have found that obesity—alone or even paired with other medical conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Cotto*, No. CV 16-36, 2020 WL 5761192, at *2 (E.D. La. Sept. 28, 2020) (recognizing the seriousness of diabetes and obesity but denying compassionate release because inmate had not shown that he was unable to take care of himself within the confines of the facility or that the BOP could not manage his medical conditions appropriately in view of medical records showing that he was being administered the necessary care); *United States v. Dressen*, No. 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) (denying compassionate release because the defendant did not identify "how his Type 2 diabetes prevents him from providing self-care in a correctional facility setting or how it amounts to extraordinary and compelling circumstances"); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted"); *United States v. Jeffers*, 466 F. Supp. 3d 999, 1007 (N.D. Iowa June 11, 2020) (finding that the defendant had not demonstrated extraordinary and compelling circumstances when his diabetes and hypertension were controlled, monitored, and managed by the BOP).

In fact, Forman's BOP records reveal that he is housed in general population, has no medical restrictions, has regular duty work assignments, and is cleared for food service. Indeed, his diabetes did not hamper or prevent him from committing at least four criminal offenses since

he was diagnosed in 2010, including his offense of conviction.   It is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).   Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release after weighing the evidence.  *Id.* at 693-94.   In exercising its discretion, the court finds that no extraordinary and compelling reasons exist, including Foreman's medical conditions, that warrant his release from confinement.

C.    Other Reasons

Forman also seeks compassionate release due to COVID-19.   He maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates.   Nevertheless, as of April 16, 2021, the figures available at www.bop.gov list 1 inmate (out of a total inmate population of 1,296) and 0 staff members at USP Beaumont as having confirmed positive cases of COVID-19, 227 inmates and 35 staff members who have recovered, and 0 inmates who succumbed to the disease.   Indeed, as discussed above, Forman tested positive for the disease, was placed in isolation, and had recovered from the virus by December 29, 2020.   Thus, it appears that the facility where Forman is housed is handling the outbreak appropriately and providing adequate medical care.

Although Forman expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Forman, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated.  *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Further, courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Forman, have already contracted and recovered from the virus.  *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release.")); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff.  To date, the BOP has administered approximately 135,263 doses of the vaccine.  In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19.  *See United States v. Wakefield*, No. 1:19-CR-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) ("Because [the defendant] has already contracted the virus and recovered without complication, and because he

is in the process of being vaccinated, the [d]efendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection."); *accord United States v. Isidaehomen*, No. 3:16-CR-0240-B-4, 2021 WL 243458, at *3 (N.D. Tex. Jan. 25, 2021).  According to www.bop.gov, the Federal Correctional Complex Beaumont, which includes USP Beaumont, has fully inoculated 1,273 inmates and 297 staff members.  Indeed, according to Forman's BOP medical records, he received the first dose of the Pfizer-BioNTech vaccine on February 25, 2020, and presumably received the second dose approximately three weeks later as recommended by the manufacturer.  Therefore, given Forman's recovery from COVID-19 and his receipt of the vaccine, Forman has failed to establish that sufficient reasons exist regarding COVID-19 that would constitute extraordinary and compelling reasons to release him from prison.

In his motion, Forman references various classes and programming in which he has participated while BOP custody as grounds for compassionate release.  While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see Shkambi*, 2021 WL 1291609, at *3; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's

discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act). In any event, his rehabilitative efforts have not proven entirely successful as evidenced by his prison disciplinary record, as discussed *infra*. Therefore, Foreman has failed to adduce any reasons that merit his early release from confinement.

      D.    <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Shkambi,* 2021 WL 1291609, at *3; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94. Forman's offense of conviction entails his participation in a drug-trafficking conspiracy involving the distribution of at least 14 grams of cocaine and 114 grams of cocaine base ("crack"). As part of the conspiracy, Forman served as a distributor and manufacturer on behalf of the drug-trafficking organization. On March 4, 2013, police officers in Paris, Texas, stopped a vehicle in

which Forman was a passenger because the driver appeared to be unrestrained.  As soon as the vehicle stopped, Forman and four others exited the vehicle and began to walk away.  During a subsequent search of the vehicle, officers discovered seven individually packaged bags of marijuana, approximately six grams of cocaine base, and $2,840 in United States currency, as well as $6,473 on the persons of the occupants.  Forman also discussed drug trafficking, including distributing specific quantities of crack cocaine as well as converting powder cocaine to "crack" cocaine, with coconspirators in recorded telephone conversations captured via wire intercept.

Moreover, contrary to his assertions in his motion that he is serving time for his first conviction and that his criminal history includes no convictions involving violence, Forman has an extensive criminal history, which includes prior convictions for deadly conduct, theft (3), evading arrest/detention (4), unauthorized use of a motor vehicle, criminal trespass, unlawful delivery of a controlled substance (cocaine) (4), possession of marijuana (2), failure to identify as a fugitive, driving without a license, unlawful possession of a controlled substance (phencyclidine ("PCP")), unlawful delivery of a controlled substance (marijuana) (2), aggravated assault with a deadly weapon, and stalking.  Forman also failed to comply with previous terms of probation. Additionally, in contrast to his assertion in his motion that he has had no disciplinary infractions while serving time, Forman has committed numerous disciplinary violations while in BOP custody, including citations for refusing to obey an order (3), interfering with staff–moderate, failing to stand count (2), interfering with taking count, and using abusive/obscene language.  He has been assessed as posing a high risk of recidivism and is housed in a high security penitentiary. Further, Forman has a history of daily substance abuse, including the use of a fifth of tequila a day, PCP, and marijuana.  In fact, Forman's BOP medical records reveal that he has been

diagnosed with PCP use disorder.  In view of the nature and circumstances of his offense of conviction, his extensive criminal history, his BOP disciplinary history, and his history of substance abuse, the court cannot conclude that Forman's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Forman compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a significant portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns").  In the instant case, releasing Forman after he has served only 42 months (or approximately 43%) of his 115-month sentence would similarly minimize the impact of his crime and the seriousness of his offense.

E.    Home Confinement

In his motion, Forman requests that the court "transfer [him] to home confinement for the rest of [his] sentence." The BOP, however, has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 739 (5th Cir. 2020) (holding that "the pandemic did not create judicial authority to grant home confinement"); *United States v. Donnell*, 476 F. Supp. 3d 514, 522 (E.D. Tex. 2020); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement."). Indeed, "[n]o inmate has a constitutional right to be housed in a particular place or any constitutional right to early release." *Cheek*, 835 F. App'x at 740. "It is not for a court to step in and mandate home confinement for prisoners, regardless of an international pandemic." *Id*.

Furthermore, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the former United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the CDC, for the purpose of determining which inmates are suitable for placement on home confinement. *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020). The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. Since March 26, 2020, the BOP has placed 24,217 inmates on home confinement. The March

19

2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).

In his Memorandum to the BOP dated March 26, 2020, former Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Forman's track record is similarly a poor one.  Thus, there is no reason to believe that Forman would not revert to his

drug-dealing and drug-abusing behavior, as well as his other criminal conduct including acts of violence, if released from prison at this juncture.

III.    Conclusion

In short, Forman has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."  *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Forman's *pro se* Motion for Compassionate Release (#718) is DENIED.

SIGNED at Beaumont, Texas, this 16th day of April, 2021.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE